FILED

2003 NOV 14  P 1: 37

US DISTRICT COURT
HARTFORD CT

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| B.L., individually and through her Parents and next friends, Mr. & Mrs. T.L., | : | CIVIL ACTION NO. 3:02CV767 (CFD) |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| New Britain Board of Education, | : | |
| **Defendants** | : | November 14, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 9(a) of the Local Rules of Civil Procedure, the New Britain Board of

Education [hereinafter "the Board"], hereby submits this memorandum of law in support of its

Motion for Summary Judgment, which is filed herewith. With its Motion and this memorandum,

the Board respectfully requests that the court enter summary judgment on the Board's behalf

with respect to the plaintiffs' May 3, 2002 Complaint. In that Complaint, the plaintiff attempts

to state a cause of action by way of an appeal from a final decision in a special education

administrative due process hearing. More specifically, the plaintiffs demand that this court

reverse Final Decision and Order 01-310, which was issued on February 19, 2002 by a State of

Connecticut Department of Education hearing officer. The plaintiffs' claims, however, find no

support either in the undisputed material facts or in the applicable law. More specifically, there

is no legally cognizable basis for the plaintiff's conclusory assertions that the hearing officer erred in deciding that the Board offered the plaintiffs' daughter, BL, an appropriate educational program for the 2001-2002 school year, and erred in denying the plaintiff's demand that the Board finance a private school placement for BL.

## I.    STATEMENT OF UNDISPUTED FACTS

The Board originally intended to replicate herein its Local Rule 9(c)(1) Statement of Material Facts Not in Dispute. Doing so, however, extended the length of this memorandum approximately 15 pages beyond the forty-page limit set forth in Rule 9(a)(2) of the Local Rules of Civil Procedure. Consequently, the Board hereby incorporates by reference the facts and exhibits which are set forth in and attached to its accompanying Local Rule 9(c)(1) Statement and respectfully asks that the court please see the Board's Local Rule 9(c)(1) Statement for those material facts that are not in dispute.

## II.    STANDARD OF PROOF

### A.  The Standard For Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted when the moving party sustains its burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. In considering the appropriateness of summary judgment, the United States Supreme Court has held: "Summary

2

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules [of Civil Procedure] as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986)(citing Fed. R. Civ. P. 1). In adjudging a motion for summary judgment, the "mere existence of factual issues -- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment." <u>Quarles v. General Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985).

"A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp. v. Catrett,</u> 477 U.S. at 324, *quoted in* <u>Parker v. Sony Pictures Entm't, Inc.</u>, 260 F.3d 100, 111 (2d Cir. 2001). In other words, when confronted with a properly supported summary judgment motion, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to find in his favor. <u>See</u> <u>McCarthy v. New York City Technical Coll.</u>, 202 F.3d 161, 167 (2d Cir. 2000). And, while it is true that "[i]f the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate,'" <u>National Union Fire Ins. Co. v. Turtur</u>, 892 F.2d 199, 203 (2nd Cir. 1989)(quoting <u>Beacon Enterprises, Inc. v. Menzies</u>, 715 F.2d 757, 762 (2nd Cir. 1983)), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Consequently, neither "conclusory statements, conjecture, [n]or speculation" will suffice to defeat summary judgment. <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d Cir. 1996). Similarly, "[m]etaphysical doubt, conjecture, or surmise cannot . . . defeat the motion." <u>Halpern v. Federal Bureau of Investigation</u>, 181 F.3d 279, 287 (2d Cir. 1999). In short, it is well established "that a summary judgment motion cannot be defeated by conclusory allegations, harsh invective, empty rhetoric, strained inferences, or unsupported conjecture. <u>Collier v. City of Chicopee</u>, 158 F.3d 601, 604 (1st Cir. 1998) (citing <u>Medina-Munoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir.1990)).

Actions brought pursuant to the IDEA are particularly susceptible to summary judgment. See, e.g., <u>Walczak v. Florida Union Free Sch. Dist.</u>, 142 F.3d 119 (2d Cir. 1998); <u>Victoria L. by Carol A. v. District Sch. Bd. Of Lee County, Florida</u>, 741 F.2d 269, 372-73 (11th Cir. 1984); <u>Vander Malle v. Ambach</u>, 667 F. Supp. 1015, 1033 (S.D.N.Y 1987), *modified on other grounds and aff'd*, 673 F.2d 49 (2d Cir. 1982). Although summary judgment is generally adjudicated in the context of undisputed material facts, IDEA cases that present a mixture of law and fact may still be decided by summary judgment as such actions "are unusual in that an ample administrative record is placed before the district court for review." <u>Bertolucci v. San Carlos Elementary Sch. Dist.</u>, 721 F. Supp. 1150, 1153 (N.D. Cal. 1989). See also <u>Mavis v. Sobol</u>, 839 F. Supp. 968, 987 n. 32 (N.D.N.Y. 1993).

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

### B.  The Standard Of Judicial Review In IDEA Cases

Section 1415(e)(2) of the IDEA provides that: the [district] court shall receive the records of the administrative proceedings,[1] shall hear additional evidence at the request of the party,[2] and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

To determine whether BL received a free appropriate public education ("FAPE"), this Court must determine: (1) whether the State has complied with the procedures set forth in the IDEA, and (2) whether the particular individualized education program (the "IEP") developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits.  "If these requirements are met, the State had complied with the obligations imposed by Congress and the courts can require no more." Hendrick Hudson Dist. Bd. Of Ed. v. Rowley, 458 U.S. 176, 206-07, 102 S.Ct. 3034 (1982).

> The role of the reviewing court in making these assessments is circumscribed. The district courts are required to give 'due weight' to the findings of a state administrative proceeding, and the 'preponderance' review provision set forth in Section 1415(e)(2) 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.' [Rowley, 458 U.S. at 206] Requiring the federal courts to defer to the findings of the state administrative proceedings ensures that the federal courts

---

[1]  Despite repeated inquiries, as of the filing of this motion, the defendants have not received notice that the plaintiffs timely filed the administrative record pursuant to 20 U.S.C. Section 1415(e)(2).  Accordingly, the Board has filed certain relevant exhibits necessary to support this motion.  To the extent that the plaintiffs file the record after the date of the filing of this motion, the Board respectfully reserves its right to object to the late filing and/or to request leave of the court to amend the instant motion for supporting references.

[2]  Plaintiffs have not requested that this court hear additional evidence.

LAW OFFICES  •  SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC  •  646 PROSPECT AVENUE  •  HARTFORD, CONNECTICUT 06105-4286  •  (860) 233-2141
JURIS NO. 62326

do not 'impose their view of preferable educational methods upon the States.' Id. at 207.

Muller v. Committee on Special Education of the East Islip Union Free School District et al., 145 F.3d 95, 101 (2d Cir. 1998).

The Second Circuit has stated that "Rowley requires that federal courts defer to the final decision of the state authorities." Id. (quoting Karl v. Board of Educ., 736 F.2d 873, 877 (2d Cir. 1984)).  The Second Circuit has noted that "deference is owed to state and local agencies having expertise in the formulation of educational programs for the handicapped." Id. (quoting Briggs v. Board of Educ., 882 F.2d 688, 693 (2d Cir. 1989)).  Indeed, the District Court is bound to affirm in the face of reasonable disagreement even where the record may indicate that there is conflicting testimony from credible experts. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034(1982); Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir. 1993). "Deference is particularly appropriate when, as here, the state hearing [officer's] review has been thorough and careful." Walczak v. Florida Union Free School District, 142 F.3d 119, 129 (2d Cir. 1998).

In addition, the Second Circuit has cautioned that "in reviewing state administrative determinations under the IDEA the federal courts must be careful not to impose a particular substantive educational standard on the state." Muller, 145 F.3d at 101.  Courts "are expected to…[be] mindful that the judiciary generally 'lack[s] the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy."'"

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

<u>Walczak</u>, 142 F.3d at 129 (2nd Cir. 1998) (quoting <u>Rowley</u>, 458 U.S. at 206, 208, 102 S Ct. at 3050-51, 3052 (quoting in turn <u>San Antonia Indep. Sch. Dist. V. Rodriguez</u>, 411 U.S. 1, 42, 93 S Ct. 1278, 1301-02, 36 L.Ed.2d 16 (1973))). <u>See also</u> <u>Garro</u>, 23 F.3d at 736. Federal courts should be reluctant to expand the scope of the IDEA "simply because they honestly and very properly feel sorry for the claimant." <u>Stacy G. v. Pasadena Ind. Sch. Dist.</u>, 695 F.2d 949, 956 (5th Cir. 1983). The Second Circuit has stated that in order to avoid impermissibly meddling in state educational methodology, a federal court must examine the record for "'objective evidence' indicating whether the child is likely to make progress or regress under the proposed plan," <u>Walczak</u>, 142 F.3d at 130, when conducting its "independent" review.

"The party challenging the outcome of the state administrative decision bears the burden of proof, and the basis for overturning the findings of any administrative hearing officer lies with the party challenging the findings." <u>Mr. and Mrs. H., as Parents of J.H. v. Region 14 Board of Education and Norman Bond</u>, 46 F.Supp.2d 106, 109 (D.Conn. 1999). In this case, the plaintiffs bear both burdens.

7

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

## III.    LEGAL ARGUMENT

The plaintiffs, B.L. and Mr. and Mrs. TL (hereafter "the plaintiffs" or "the Parents")

assert that the Final Decision and Order 01-310, which the hearing officer, Attorney Margaret J.

Slez, issued on February 19, 2002 in the underlying State of Connecticut Department of

Education due process hearing was in error should be reversed. Complaint, ¶¶4, 12-13, 33-40.

The Parents predicate their claims on a number of conclusory allegations that have no basis in

the administrative record or in Attorney Slez' February 19, 2002 decision, see Exhibit A,

including a claim that the hearing officer violated 20 U.S.C. §1400, et seq., 29 U.S.C. §794, et

seq., Connecticut General Statutes §§10-76, et seq. and 4-166 et seq., and the parent's right to

due process pursuant to the United States Constitution because of her failure to credit certain

witness testimony. Complaint, ¶¶22-29, 33-40. With this action, the plaintiff seeks, *inter alia*, a

ruling from this court that the hearing officer's underlying Decision and Order should be

reversed, with findings that the Board should have funded B.L.'s private school placement

during the 2001-02 school year. Although the plaintiffs claim that essentially every substantive

conclusion set forth in the Final Decision and Order 01-31o is erroneous, Id., the crux of this

action is the plaintiffs' unsupported conjecture that BL has not received an apporpirate

educational program from the defendant Board for the 2001-02 school year. Id., ¶35. The

administrative record and the decision of the hearing officer demonstrate the exact opposite. In

fact, the transcript and exhibits of the underlying administrative hearing reflect a textbook

8

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Congress wished in the way of substantive content in an IEP.'" Id. (quoting Rowley, 458 U.S. at

206). In this case, the plaintiffs have stated in a conclusory manner that the Board violated the

procedural requirements of the IDEA, but these claims find no support in the uncontroverted

facts of this case.

In considering whether a school district has violated the procedures prescribed by the

IDEA, a court must first determine whether the IEP contains:

> (1) the child's present level of educational performance; (2) the annual goals for the
> child, including short-term instructional objectives; (3) the specific educational services
> to be provided to the child, and the extent to which the child will be able to participate in
> regular education programs; (4) the transition services needed for a child as he or she
> begins to leave a school setting; (5) the projected initiation date and duration for proposed
> services; and (6) objective criteria and evaluation procedures and schedules for
> determining, on at least an annual basis, whether instructional objectives are being
> achieved.

M.S., 231 F.3d at 103. All of these required elements are contained in Board Exhibits 36, 43, 59,

and 61. Additionally, it is undisputed that both the plaintiffs and relevant staff actively

participated in the development of the goals and objectives. While the parents now claim that

the IEP was inappropriate and not tailored to BL's unique individual needs, the Board witnesses

credibly testified that the IEP was appropriate and the Student was receiving significant

educational benefit, given her average intellectual functioning and the limitations of BL's

disabilities. 01/08/02 Testimony of Dr. Miriam Cherkes-Jukolwski, p. 84. The PPT incorporated

into the IEP's goals and objectives that were recommended by Dr. Cherkes-Jukolwski and the

10

evaluative information from Dr. Bregman and Dr. Riggs. Not one expert witness testified on behalf of the parent that BL's IEP was procedurally flawed. Based on the weight of the evidence, the hearing officer appropriately found that the Board's proposed IEP met the procedural mandates of the IDEA.

Assuming *arguendo* that the parents' allegations are true that the Student's IEP was procedurally flawed, they still not entitled to a private school placement at Board expense. A procedural violation of the IDEA does not, in and of itself, warrant a change in the child's educational placement. This is particularly so where the parents are seeking a private school setting – one of the most restrictive environments for a child. In order to conclude that procedural violations resulted in a denial of a free appropriate public education, the parent must show that the procedural errors resulted in a loss of educational opportunity. See <u>Burke County Bd. of Educ. v. Denton</u>, 895 F.2d 973, 982 (4th Cir. 1999); <u>Evans v. District No. 17 of Douglas County Nebraska</u>, 841 F.2d 824, 830 (8th Cir. 1988). Based on the fact the BL made progress throughout the 2000-01 school year, see section C of this memorandum, *infra*, there was no loss of educational opportunity as a result of any of the plaintiffs' alleged procedural violations.

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

**B.**   **The 2001-02 Program Developed And Proposed For B.L. Is Reasonably Calculated To Enable B.L. To Receive An Educational Benefit And Thus The Hearing Officer's Determination That The Program Was Appropriate Must Be Affirmed.**

In the present case the plaintiffs claim, *inter alia*, that:

The Hearing Officer's final decision is erroneous as a matter of law because she failed to consider the substantial evidence on the record that had established that the Board had failed to provide BL with a free appropriate pubic education as required by the IDEA and other laws.  The Due Process Hearing Officer's decision to exclude relevant testimony and evidence regarding B.L. because it had not bee presented at the June 2001 PPT meetings, Finding of Fact No. 10, was arbitrary and not supported by fact, law or the record.

The Due Process Hearing Officer's failure to consider or discuss relevant testimony and evidence from Karen LaRussa and Drs. Bregman, Sharpe & Cherkes-Julkowski regarding B.L.'s program and placement was arbitrary, capricious, and erroneous as a matter of law, since the IDEA and Connecticut's administrative hearing procedures request that final decisions are to be based upon substantial evidence on the record of the entire proceeding.

The plaintiff are aggrieved by the final decision of the Due Process Hearing Officer because BL has not received an appropriate educational program from the defendant Board for the 2001-02 school year... .

Complaint, ¶¶33-35.[3]  Additionally, the plaintiffs claim that the Board should have paid for BL's private school program at the Ben Bronz Academy, Id., ¶35, and asks this court to award the costs associated with BL's placement at Ben Bronz Academy , including tuition, transportation,

---

[3] It is significant that the plaintiffs do not claim that B.L.'s program during the 2000-01 school year was inappropriate.  The issue before the Connecticut State Department of Education hearing officer (and now this court) was whether the proposed IEP developed for the Student to be delivered during the 2001-02 school year. Complaint, ¶¶15-16.

12

incidental educational costs, and costs associated with financing those costs including an award of reasonable attorney's fees and costs. Id., ¶42. The plaintiffs neglect, however, to offer anything more than these conclusory allegations, which is, perhaps, a reflection of the fact that neither the material facts, nor the applicable law, support their assertions.

An IEP must provide an opportunity for more than "trivial advancement" and a free appropriate public education (FAPE) under the IDEA is one that is "likely to produce progress, not regression." Mrs. B. v. Milford Board of Education, 103 F.3d 1114, 1121 (2d Cir. 1997); Cypress-Fairbanks Independent School District v. Michael F., 118 F.3d 245, 248 (5th Cir. 1997); cert. denied. 118 S.Ct. 690 (1998). The Supreme Court has rejected the contention that the appropriate education mandated by the IDEA requires states to "maximize the potential of handicapped children." Walczak v. Florida Free School District, 142 F.3d 119, 130 (2d Cir. 1998), quoting Rowley, 458 U.S. at 197, n.21, 189, 102. S.Ct. 3034. "The purpose of the Act was 'more to open the door of public education to handicapped children on appropriate terms than to guaranty any particular level of education once inside.'" Id.; Lunceford v. District of Columbia Board of Education, 745 F.2d 1577, 1583 (2d Cir. 1989).

The objective evidence before this Court indicates that B.L. was making educational progress as she advanced throughout the 2000-01 school year with the educational assistance given to her. The Board put on witnesses that had frequent contact

13

with B.L. in the school setting, and who also had a high level of experience with learning disabled children – Dr. Cathryn Riggs, See Defendants Rule 9(c)(1) Statement of Facts Not In Dispute(hereinafter "Proposed Finding"), Proposed Findings 19; Ms. Ann Butterfield, Proposed Findings 8, 23 and 25; Ms. Nancy McGraw, Proposed Finding 24; and Ms. Roberta Dolan, Proposed Findings 16, 21, 22, 25. The only evidence suggesting that BL was not making progress was from Dr. Cherkes-Jukowlski who had not observed BL in the New Britain public schools program in over a year when the recommendation was made and Karen LaRussa who also had not observed BL in the public school program. See Proposed Finding 11. Neither of these witnesses had spoken with BL's teacher, the consultant who had been working with BL and staff, his aides or related service providers about the recommended 2001-02 IEP. More importantly, neither doctor had any practical understanding of BL.'s proposed educational program in the New Britain public schools. Even assuming that Dr. Cherkes-Jukolwski and Ms. LaRussa had more intimate knowledge of the Student than what was testified to at the hearing, their evaluations were not relevant to the decision at issue before the hearing officer regarding the June 2001 PPT decisions because at the time the evaluations were conducted, BL had already been withdrawn from the public school system and the school district was not given the opportunity to develop another IEP based upon these revised evaluations. Due to lack of substantial contact with BL and the lack of experience with BL.'s educational

14

program, the hearing officer appropriately gave more weight to the testimony of the

Board's witnesses and discredited the testimony of Dr. Cherkes-Jukowlski and Ms.

LaRussa. Gonzales v. Puerto Rico Dept. of Educ., 254 F.3d 350, 352 (1st Cir. 2001);

Devine v. Indian River City School Board, 249 F.3d 1289, 1293 (11th Cir. 2001); Clay T.

v. Walton Cty. Sch. Dist., 952 F.Supp. 817, 824 (M.D.Ga. 1997).

   The Parents also claim that the hearing officer disregarded the testimony of Dr.

Bregman. Compaint, ¶¶21 and 23. A reading of the hearing officer's decision, however,

points out that she substantially relied on Dr. Bregman's testimony. See Exhibit A,

p.5(finding #13). For example, the hearing officer quoted from Dr. Bregman's report in

her findings indicating that

> "[d]iagnostically, [the student] manifests a learning disability and a generalized
> anxiety disorder of mild to moderate severity…Although it would be a mistake to
> overemphasize [the student's] self-consciousness and sense of vulnerability, it is
> equally important to provide [the student] with educational and treatment
> strategies that will promote adaptive growth and development."

Id. The hearing officer also found, as was testified to by both Dr. Bregman and Nancy

McGraw, that Ms. McGraw - the school psychologist consulted with Dr. Bregman to

prepare additional objectives for the student's IEP to ensure that his recommendations

were being appropriately addressed. Id. (finding #14).

15

All of the Board witnesses credibly testified that BL had made satisfactory progress on all of her goals and objectives set forth in his IEP and provided detailed reasons for their opinion in this regard. See Proposed Finding 19, 22-25; Board Exhibits 65-67. In the school setting, BL was anxious to please her teachers and respond to questions, participate with peers, and become engaged in the learning process.

Dr. Riggs, the consultant, testified at the hearing that based on her observations BL was learning and seemed very responsive to requests that were being made of her at school. It was Dr. Rigg's opinion that the educational program provided to BL by New Britain was an appropriate program. She testified that BL had benefited from the program. Considering Dr. Rigg's expertise and experience with BL, her expert testimony - recommending that B.L. remain in the public school setting - was very influential to the hearing officer and this finding should not be disturbed by this court. See, e.g., Gerstmeyer, 850 F. Supp. 361, 364 (D.Md. 1994), quoting Doyle v. Arlington County School Board, 953 F.2d 100, 103 (4th Cir. 1991)(court held that the findings of hearing officers are to be determined prima facie correct.).

Accordingly, this Court should affirm the hearing officer's February 19, 2002 Final Decision and Order that the Board has offered BL an appropriate IEP for the 2001-2002 school year. Exhibit A; see Mather v. Hartford School District, et al., 928 F.Supp. 437, 447-49 (D.Vt. 1996).

16

**C. Since the State Department of Education Hearing Officer Correctly Determined That B.L.'s Program Was Appropriate And That She Was Making Progress, It Is Unnecessary To Determine Whether A Private School Placement Is Appropriate.**

In lieu of presenting credible evidence at the underlying hearing to counter the appropriateness of the Board's proposed program and to counter BL's evident progress, the plaintiffs rely instead, as she does in the instant case, on the argument that the parents' witnesses – Dr. Cherkes-Jukolwski and Ms. LaRussa considered BL's functioning at Ben Bronz to be appropriate and that she is below average in terms of some of her test scores for a student her age. The plaintiffs' reliance on this argument to overturn the hearing officer's decision is misplaced, and essentially puts the cart before the proverbial horse in terms of the Board's obligation to fund private school placements pursuant to IDEA. Since the Board provided an appropriate program and BL was making progress, see sections A and B of this memorandum, *supra*, there is no obligation to examine whether a student should be placed in a private school setting. The Board is not required to pay for the cost of education, including special education and related services, of a child with a disability at a private school if the Board made a free appropriate public education (FAPE) available to the child. 34 C.F.R. §300.403(a); M.C. v. Voluntown Board of Education, 226 F.3d 60, 66-68 (2d Cir. 2000). The Board is nevertheless

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

briefing this issue to emphasize that the hearing officer correctly ruled that a private school placement was inappropriate for BL pursuant to IDEA.

While a student's educational program must not only be designed to provide some educational benefit, the federal and state regulations require that the state deliver the program in the least restrictive environment. 34 C.F.R. §300.550-§300.556; Conn.Agencies Regs. §10-76d-16. The least restrictive environment (LRE) is one which, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled. 20 U.S.C. §1412(5)(A). See Carlisle Area Schools v. Scott P., 62 F.3d 520, 532 (3d Cir. 1995). The Act's preference for mainstreaming or LRE 'rises to the level of a rebuttal presumption.'" Board of Education v. Holland, 586 F.Supp. 874, 878 (E.D. Cal 1992) aff'd. 14 F.3d 1398 (9th Cir.) cert. denied., 512 U.S. 1207, 114 S.Ct. 2679 (1994).

In Roncker on Behalf of Roncker v. Walter, 700 F.2d 1058, 1063 (6th Cir. 1983), the court set out its interpretation of the mainstreaming requirement of the federal Act:

> The Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference. The proper inquiry is whether a proposed placement is appropriate under the Act.

> However, this Court recognizes that even though the preference for mainstreaming is very strong there are still situations in which, some handicapped children simply must be educated in segregated facilities either because the handicapped child would not benefit from mainstreaming, because any marginal

18

benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting.

Id., at 1063.

A private school placement – sought by the plaintiffs in this case – is by its very nature one of the most restrictive type of placement for a child because it completely removes the child from his nondisabled peers, his community and his school. The regulations implementing the IDEA provide that if "placement in a public or private residential program is *necessary* to provide special education and related services to a child with a disability, the program, including non-medical care and room and board must be at no cost to the parents of the child." 34 C.F.R. §300.302. The instant case does not satisfy this criteria because the evidence supports a finding that BL was making progress in school and she enjoyed socializing with her peers.

What has become abundantly clear from the plaintiffs' statements is that they have a fundamentally mistaken view of the role of the district. BL's mother testified that one of the reasons why she was interested in a private school placement at Ben Bronz was because she mistrusted the school district. The school district has expended an enormous amount of resources - hired a consultant to review BL's program, paid for numerous evaluations over the past several years - to gain the parents' trust regarding the educational issues the parents have

19

raised. Such alleged mistrust does not provide a basis for BL to be removed, at district expense,

from the Student's peers, her school and her community and contradicts the least restrictive

environment requirement of the IDEA. 20 U.S.C. §1412(5)(A). Since FAPE does not mean the

best or potentially best maximizing education for the individual child, the focus must be on the

Board's proposed placement, "not on the alternative that the family preferred." Tucker v.

Calaway, 136 F.3d 495 (6th Cir. 1998), quoting Gregory K. v. Longview School District, 811

F.2d 1307 (9th Cir. 1987). Once the hearing officer reached her decision regarding the

appropriateness of the Board's proposed program, she was not obligated to determine the

appropriateness of a private placement for B.L. 34 C.F.R. §300.403(a).

> **D.      Plaintiff Fails To State A Legally Cognizable Claim For Recovery Under The
> Due Process Clause Pursuant To The United States Constitution And
> Therefore, These Claims Should Also Be Dismissed.**

The Due Process Clause of the Fourteenth Amendment provides that "no State shall . . .

deprive any person of life, liberty, or property, without due process of law." U.S. CONST.

amend XIV.   An analysis of the plaintiffs' constitutional claims that the Board violated their

due process rights reveals that the plaintiffs' claims have absolutely no merit and they are merely

throwing constitutional tags on nonconstitutional issues.

The Complaint alleges in a cursory manner that "[t]he final decision of the Due Process

Hearing Officer has violated the plaintiffs' rights to Due Process of Law as secured by the

20

fourteenth Amendment to the U.S. Constitution." Complaint, ¶39. Although not explicitly alleged by the Plaintiff, the only way to interpret this Fourteenth Amendment substantive due process claim is as a claim that BL lost his property interest in a "free appropriate public education."[4]  This substantive claim must therefore fail.  With respect to public education, citizens possess a property interest not in the particulars of the educational experience, but rather in participation in the educational process as a whole. "The myriad of [educational] activities cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution." See Mazevski v. Horseheads Central School District, 950 F.Supp. 69, 72 (W.D.N.Y. 1997); Dallam v. Cumberland Valley Sch. Dist., 391 F.Supp. 358, 361 (M.D. Pa. 1975).  BL was certainly provided with an education by the New Britain school district. Plaintiffs' allegations fall well short of showing that BL was denied her property interest in the educational process. K.U. By and Through Michael U. v. Alvin Independent School Dist., 991 F.Supp. 599, 606 (S.D.Tex. 1998).  Furthermore, in order to state a viable claim for a violation of due process rights, the plaintiffs must plead allegations beyond those within the purview of the IDEA.  See Engwiller v. Pine Plains School District, 110 F.Supp. 2d 236, 250-251 (S.D.N.Y. 2000).  Therefore, the contention that BL was denied substantive due process when she was

---

[4] The Plaintiff fails to raise a §1983 claim as the legal basis for raising these constitutional claims against the defendants, and these constitutional claims should therefore be denied on this ground alone.

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

allegedly denied an appropriate special educational program fails to state a legally cognizable ground for recovery, as she has suffered no deprivation of a property or liberty interest.

The plaintiffs also argues that their procedural due process rights were violated by the inconsistent and various evidentiary rulings of the hearing officer in the underlying due process hearing. Complaint, ¶¶20-29, 33-35. The plaintiffs' allegations in this regard complain that the hearing officer ignored the weight of the evidence. Id. The Board maintains that these claims are entirely without merit and are only made by the plaintiff as a last ditch attempt to sway this court to rule in favor of BL.

It is well settled that a plaintiff asserting a constitutionally based Section 1983 claim for procedural violations of the IDEA must establish a constitutional violation "outside the scope of the IDEA." See Evans v. Bd. Of Educ. Of the Rhinebeck Cent. Sch. Dist., 930 F.Supp. 83, 102-03 (S.D.N.Y. 1996) citing Bonar v. Ambach, 771 F.2d 14, 18 (2d Cir. 1985). In this regard "...the requirements of procedural due process are triggered only when a protected interest is at stake." See W.B. v. Matula, 67 F.3d 484, 502 (3d Cir. 1995); Engwiller v. Pine Plains Sch. Dist., 110 F.Supp. 2d at 250. "Assuming that children have a liberty interest in a free appropriate public education, see Mrs. W. v. Tirozzi, 832 F.2d 748, 751 (2d Cir. 1987), the government may deprive one of that interest so long as the process afforded provides minimal constitutional procedural protections. See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893 (1976)."

LAW OFFICES • SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

<u>Wenger v. Canastota School District</u>, 979 F.Supp. 147, 153 (1997), aff'd, 181 F.3d 184 (2d Cir. 1999).

The plaintiffs admit that the hearing officer accepted all of the exhibits introduced by the parties, Complaint, ¶19, and the witnesses were permitted to testify, Id., ¶21. Otherwise, there are vague constitutional accusations in their Complaint, and the defendant must infer that the procedural due process claim they are raising involves the hearing officer's final decision that discredited relevant witness testimony. It is well settled, however, that it is appropriately within the jurisdiction of an administrative hearing officer to rule on the admissibility of evidence. See Connecticut Agencies Regs. §10-76h-2. The proof is on the plaintiff to point to any improper rulings, or testimony that should have been considered credible by the hearing officer where it might have had some substantial relevance to their claims. The Board maintains that they are unable to do so. Rather, the plaintiffs are taking issue with the hearing officer's findings regarding the credibility of the witnesses, and such claims do not amount to a constitutional violation.

### E. The Plaintiffs Rehabilitation Act Claims Are Also Likewise Legally Insufficient And Should Be Dismissed.

The plaintiffs also alleged that BL was not provided a free, appropriate educational program at New Britain under Section 504 of the Rehabilitation Act. 29 U.S.C. §794. The

23

plaintiffs have failed to allege any conduct on behalf of the Board which distinguished their Section 504 claim from the IDEA claims, and therefore such claims should also be dismissed.[5]

Unlike the IDEA, Section 504 focuses not on creating rights and entitlements but on proscribing certain discriminatory acts. Specifically, the Rehabilitation Act states:

> No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance... .

29 U.S.C. §794.

"To establish a violation of Section 504 in the school context, a plaintiff must demonstrate that: (1) [s]he is a person with a disability as defined by the Act; (2) [s]he is 'otherwise qualified' to participate in school activities; (3) defendants receive federal financial assistance; and (4) [s]he was subject to discrimination solely on the basis of his disability."

---

[5] The IDEA was specifically amended in 1986 in order to address the ability of parents to assert other federal law claims.

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, Title V of the Rehabilitation Act of 1973 [29 U.S.C. §790 *et seq.*], or other federal statutes protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part [20 U.S.C. §1411 *et seq.*], the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this part.

20 U.S.C. §1415

24

*LAW OFFICES* • **SULLIVAN, SCHOEN, CAMPANE & CONNON, LLC** • 646 PROSPECT AVENUE • HARTFORD, CONNECTICUT 06105-4286 • (860) 233-2141
JURIS NO. 62326

Sellers by Sellers v. School Bd. of the City of Manassas, 960 F.Supp. 1006, 1010 (E.D.Va. 1997).

In this regard, plaintiffs must allege more than the failure to provide a FAPE, an incorrect evaluation, or a faulty IEP in order to sustain a claim of discrimination. Breen By and Through Breen v. St. Charles R-IV School Dist., 2 F.Supp. 2d 1214 (E.D.Mo. 1997)(citing Monahan v. State of Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982)). The plaintiffs must allege intentional "bad faith or gross misjudgment." Id; see Thompson, 144 F.3d at 580; Hoekstra v. Independent School District, No. 283, 103 F.3d 624, 626-27(8th Cir. 1996). As noted by the Seventh Circuit Court of Appeals,

> Section 504…cannot be used to circumvent the procedural requirements imposed by the [IDEA] when the two claims are parallel, because to do so would thwart the intent of Congress, manifested in the structure of the more detailed and specific [IDEA]. This is true for procedural challenges to state and local agency action as well as for challenges regarding substantive placement decisions, because the [IDEA] provides for scrutiny of alleged procedural irregularities. …

Timms on behalf of Timms v. Metropolitan School District of Wabash County, Inc., 722 F.2d 1310, 1318 (7th Cir. 1983)(citations omitted).

Conceivably, a Section 504 claim could be sustained if the allegations inferred, at a minimum, that instructors failed to adequately administer the program based on bias or prejudice or because the plaintiff was handicapped. In the instant case, plaintiffs have failed to allege such

25

intentional misconduct on the part of the Board.   Rather, the Complaint alleges only discrimination based on IDEA-type educational decisions focusing on the deprivation of a free appropriate education and a failure to reimburse the plaintiffs for tuition paid as a result of the unilateral placement at a private school.   Plaintiffs' claims under Section 504 are therefore redundant in that they are identical to the claims already raised under the IDEA.  Despite the fact that the plaintiffs attempt to disguise their claims as those that merit additional review under Section 504, these allegations are subject to the underlying administrative proceeding and judicial review of the IDEA claims. 20 U.S.C. §1415(f).  Accordingly, these Section 504 claims should be dismissed because the plaintiffs failed to state a claim.

26

## IV. CONCLUSION

WHEREFORE, the Board respectfully requests that the February 19, 2002 Final Order and Decision of Hearing Officer Margaret Slez be affirmed, or as an alternative, that this Court issue a decision in favor of the Board finding that it has offered BL an appropriate IEP for the 2001-2002 school year, and is not required to place the Student in the private school placement selected by the Parents.

THE DEFENDANT,
NEW BRITAIN BOARD OF EDUCATION


By _____
Nicole A. Bernabo
Federal Bar No. ct19783
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, Connecticut 06105
Telephone: (860) 233-2141
Facsimile: (860) 233-0516
E-mail: nbernabo@sscc-law.com

27

# CERTIFICATION

This is to certify that a copy of the foregoing Memorandum of Law in support of its motion for Summary Judgment was sent via first-class mail, postage prepaid, on this 14th day of November 2003, to: Lawrence W. Berliner, Esq., Law Offices of Howard Klebanoff, P.C., 433 South Main Street, Suite 102, West Hartford, CT 06110.

Nicole A. Bernabo

28