

## STATE OF CONNECTICUT
## DEPARTMENT OF EDUCATION

Student v. New Britain Board of Education

Appearing on behalf of the Parents:  Attorney Lawrence W. Berliner
                                      Klebanoff & Phelan, P.C.
                                      433 South Main Street – Suite 102
                                      West Hartford CT 06110

Appearing on behalf of the Board:  Attorney Lawrence J. Campane
                                   Sullivan, Schoen, Campane & Connon
                                   646 Prospect Avenue
                                   Hartford CT 06105-4286

Appearing before:  Attorney Margaret J. Slez, Hearing Officer

### FINAL DECISION AND ORDER

**ISSUES:**

1.  Did the Board offer the student an appropriate program for the 2001-2002 school year?

2.  Are the parents entitled to reimbursement for their unilateral placement of the student at Ben Bronz Academy?

**SUMMARY:**

In April 1998, in the second grade, the student was found eligible for special education services based on the identification of a specific learning disability.  At the end of third grade, the 1998-99 school year, the parents agreed to retaining the student in the third grade for the 1999-2000 school year (Exhibit B-19).  Over the course of the student's fourth grade year, school year 2000-2001, the parents became increasingly dissatisfied with the student's progress.  On June 28, 2001, the parents gave written notice to the Board (Exhibit B-71) that they were rejecting the IEP (Exhibit B-68) developed for the 2001-2002 school year, proposed at IEP meetings on June 7 and 19, 2001, and requested that the student be placed at Ben Bronz Academy for fifth grade.  Upon the Board's refusal to place the student at Ben Bronz Academy, the parents requested a due process hearing by letter dated September 12, 2001 (Exhibit H.O.-1).

**FINDINGS OF FACT:**

1. The student had been receiving remedial reading services since first grade, the 1996-97 school year. When the student was in the second grade, the parents reported "increased difficulty with simple paperwork" and raised questions regarding attention and inconsistent academic performance. (Exhibit B-10, 11) A PPT meeting was convened on February 23, 1998, and the Board agreed to undertake the comprehensive evaluation requested by the parents.

2. The comprehensive evaluation was done in March 1998 (Exhibit B-13). Intellectual assessment suggested that the student was "solidly functioning within the Average range." On the WISC-III, the student achieved a verbal scale IQ score of 102, a performance scale IQ score of 106, and a full scale IQ score of 104. Although the student did demonstrate some relative strengths and weaknesses, performance on verbal and nonverbal tasks indicated "even cognitive development." In the verbal area, the student demonstrated a relative strength in social judgment and general common sense, as well as above average abilities in word knowledge, general fund of information, and good conceptual thinking. Weaknesses were found in the student's numerical reasoning ability and perception of spatial relations. The educational assessment indicated that the student was academically functioning on grade level in the areas of reading and writing, but math skills were significantly below the student's measured intellectual potential. Social/emotional assessment suggested that the student's externalizing behaviors were consistently within average expectations, but the tendency to be "nervous, fearful, or worried about real or imagined problems (anxiety)" was deemed Clinically Significant and the student's ability to adapt readily to changes in the environment was consistently rated as within the At-Risk range.

3. On April 14, 1998, a Multidisciplinary Composite Evaluation Report for Students Suspected of Being Learning Disabled was completed (Exhibit B-14, pp. 8-9). The PPT determined that there existed a severe discrepancy between ability and achievement in mathematical computation and mathematical reasoning and that the discrepancy was not the result of visual, hearing, or motor impairment; mental retardation; emotional disturbance; environmental, cultural or economic disadvantage; or lack of motivation or opportunity to learn. The PPT further determined that the severe discrepancy was not correctable without special education and related services. Concluding that a specific learning disability had been identified and that the student was eligible for special education and related services, the PPT developed an IEP to be implemented for the balance of second grade and third grade (Exhibit B-14).

4. The IEP developed on April 14, 1998, called for 27 hours of regular education and 3 hours of special education services (Exhibit B-14, p. 5). On March 8, 1999, the IEP team met to review the student's progress in third grade, the 1998-99 school year. Although teachers noted that the student had made both academic and social progress, there was agreement that the student should continue in the Special Education Inclusion (S.E.I.) program based upon weaknesses in math skills, written language, and organizational ability. Special education services were increased to 5 hours in the IEP developed for the 1999-2000 school year

(Exhibit B-15). At the IEP meeting on March 8, 1999, the parents indicated that they were considering retaining the student in third grade for the 1999-2000 school year, to which the Board made no objection (Exhibit B-15, p.2).

5.  By letter dated August 16, 1999 (Exhibit B-19), the parents notified the Board that they were having performed an independent psychoeducational evaluation of the student and stated that "[w]e do agree with [the student's] retention in third grade as long as [the student] receives the support around [the student's] areas of deficit, which include learning disabilities and health impairments." There is nothing in the record to indicate that the student has health impairments. The parents' letter also stated that "[a] complete language evaluation of [the student] is necessary as it is clear that [the student] is impaired significantly in reading and writing." Additionally, the parents stated that "[t]his testing should include a look at [the student's] central auditory processing."

6.  In fact, the independent psychoeducational evaluation had been performed at the request of the parents by Janet Schrager, Ph.D., on July 16, 1999. Although the student again scored at an average level for cognitive ability on the WISC-III, the achievement scores were found to be "considerably below grade level." Dr. Schrager's report suggested the possible existence of "some kind of central auditory processing deficit." Dr. Schrager recommended a language and central processing evaluation by a speech/language therapist to understand the student's lack of progress in phonetic awareness, spelling, reading, and writing; more extensive support services in those areas as well as in math; and further evaluation "to address the question of Attention Deficit Disorder and Anxiety." (Exhibit B-20). There is nothing in the record to indicate that the student has been diagnosed with Attention Deficit Disorder.

7.  The PPT met on September 20, 1999, to review the student's program (Exhibit B-21). The parents requested a speech/language evaluation. The PPT met again on October 25, 1999, to discuss the report of evaluation done by a Board speech/language pathologist (Exhibit B-23). On the Phonological Awareness Profile, criterion referenced and designed to diagnose deficits in auditory phonological processing skills necessary for a child to learn to read, the results indicated that the student had mastered segmentation, isolation, deletion, substitution, and blending. On the Test of Language Development – Intermediate 3 (TOLD-I:3), which assesses receptive and expressive language skills in the areas of grammar, syntax, and vocabulary, the student scored within the average range on all tasks. The Clinical Evaluation of Language Fundamentals – 3d Edition (CELF-3) was given to assess semantic, morphological, syntactic, and auditory memory skills. The student scored within the average range on various CELF-3 subtests which assess auditory processing of language at various levels of length and complexity. The student's classroom teacher completed a language skills checklist and the evaluating speech/language pathologist observed the student in the classroom setting. "[At] the discourse level", which is the highest level of language functioning where all language skills must be synthesized, the student's "receptive (auditory processing) and expressive language skills are at least average." (Exhibit B-22; testimony of Ann Butterfield, Board speech/language pathologist, January 15, 2002). The parents accepted the findings of the Board speech/language evaluation and agreed that "no phonological deficit exists." (Exhibit B-25).

8. By letter dated November 9, 1999 (Exhibit B-25), the parents asked that a PPT meeting be convened to discuss the parents' request for an independent "consultation/evaluation" by a person, mutually agreed-to by the Board and the parents, who would review all records and evaluations, interview the parents and Board staff, observe the student throughout the school day, perform supplemental testing if necessary, and determine whether or not the student's program is appropriate or requires revision. The parents also requested reimbursement for the evaluation done by Dr. Schrager.

9. The PPT met on November 29, 1999 (Exhibit B-26). Since the student had met previously-established goals, a new IEP was developed. The Board agreed to an independent evaluation by a person to be jointly selected by the parties. The Board denied the parents' request for reimbursement for Dr. Schrager's evaluation.

10. Miriam Cherkes-Julkowski, Ph.D., was selected to do the independent evaluation. Dr. Cherkes-Julkowski did testing and an interview on April 19, 2000, and observed the student in the school setting on April 28, 2000. Dr. Cherkes-Julkowski reported decoding and spelling problems, difficulty with phoneme awareness and phonological processing, superior text comprehension ("nearly very superior despite some negative effects of decoding errors"), orthographic awareness problems, math difficulties resulting from disorganized thinking ("cognitive disruption"), and average IQ. "[The student's] often loose language and otherwise chaotic thinking is a reflection of the disorganization that [the student] can experience." Dr. Cherkes-Julkowski recommended continued individual support in reading and spelling; the use of a systematic, code-based reading program; one-on-one reading skill instruction for at least 30 minutes daily; the use of Inspiration software to assist organizing the student's writing tasks; and a language therapist to assist the team in developing objectives and instructional ideas for improving the student's written and spoken language. Also, "[t]his testing suggests the need for psychiatric follow-up at least through late adolescence." Dr. Cherkes-Julkowski's report did not address the topic of central auditory processing. (Exhibit B-35). Dr. Cherkes-Julkowski re-evaluated the student on November 28, 2001, but this re-evaluation was done many months after the parents rejected the IEP which is at issue here and after the unilateral placement at Ben Bronz Academy. The report of the re-evaluation (Exhibit P-14) is markedly at odds with Board personnel testimony during the course of the hearing and evaluations done prior to development of the challenged IEP, describing serious regression notwithstanding the student's current placement in the private school and, thereby, undermining the credibility of the report. Since the appropriateness of the June 2001 IEP (Exhibit B-68) must be considered in light of information available to the PPT at the time the IEP was developed, the report of the re-evaluation by Dr. Cherkes-Julkowski (Exhibit P-14) is disregarded for the purpose of this decision.

11. The PPT met on June 1, 2000, to develop an IEP for fourth grade, the 2000-2001 school year. The PPT agreed that the Inspiration software would be used to help the student organize writing tasks and added direct counseling services for one half-hour each week to support the student's confidence level. The team further agreed that the special education teacher would consult with the Board speech/language pathologist regarding intervention plans for phonemic awareness and effective formulation of curriculum language and explanations. The student would be permitted extra time on all assignments and on tests as needed. (Exhibit B-36).

12. The PPT met again on September 7, 2000, to discuss parent questions and concerns. The parents requested a central auditory processing evaluation and an assistive technology evaluation, both of which were refused by the Board. Since central auditory processing was not mentioned in Dr. Cherkes-Julkowski's report (Exhibit B-35), the Board determined that no assessment was necessary. More information regarding assistive technology was to be obtained from Dr. Cherkes-Julkowski. The Board offered the services of Cathryn Riggs, Ph.D., to monitor the implementation of the student's IEP; the parents agreed to discuss and respond. The student's Wilson reading program, one of the programs recommended by Dr. Cherkes-Julkowski, was reviewed as was the involvement of the Board speech/language pathologist in the implementation of the Wilson reading program, also recommended by Dr. Cherkes-Julkowski. It was determined that a psychiatric evaluation would be included in the student's triennial evaluation. (Exhibit B-43).

13. The student was referred by the Board to Joel Bregman, M.D., for a diagnostic school psychiatric consultation. The student was seen by Dr. Bregman on November 8, 2000, and the family met with him on December 5, 2000. Dr. Bregman reported that during the interview the student was "energized, restless, and fidgety, particularly during open-ended discussions and conversations" and "endorsed a significant number of symptoms reflecting performance, anticipatory, and social anxiety on a self-report checklist (the Revised Children's Manifest Anxiety Scale)" He reported that the student "worries a good deal about the impressions others have of [the student], fearing that [the student] may not be well thought of and appreciated." The student expressed "sensitivity regarding the views and opinions held of [the student] by parents, teachers, and other authority figures, yet it was somewhat unclear as to the strength and intensity of these feelings." The student described school experience "in positive terms," "fond of [the student's] teachers," connected with classmates, and pleased with existing friendships. Although the student did acknowledge performance anxiety, the student denied worrying a great deal about school or experiencing significant difficulties with regard to academics or socialization. Dr. Bregman's report states: "Diagnostically, [the student] manifests a learning disability and a generalized anxiety disorder of mild to moderate severity. . . . Although it would be a mistake to overemphasize [the student's] self-consciousness and sense of vulnerability, it is equally important to provide [the student] with educational and treatment strategies that will promote adaptive growth and development." Dr. Bregman did not observe the student in the school setting and, thus, could not testify as to how the student actually "presents in class" when anxious. Based on testimony given by Board staff members engaged in the student's program, Dr. Bregman's recommendation that "[e]very effort should be made to plan individual and small group instruction during times of the day when major subjects are not being taught," was already an existing Board practice. (Exhibit B-58; B-61, p. 2; testimony of Dr. Joel Bregman, December-17, 2001).

14. The PPT met on December 20, 2000, to review Dr. Bregman's evaluation report. (Exhibit B-59). It was agreed that after consultation with Dr. Bregman, the school psychologist would prepare further objectives for the IEP goal related to the development of positive self-concept (Exhibit B-36, p.10). Although reported by the parents, there was no direct testimony from the student regarding the student's alleged fear of missing regular education classroom instruction during the time the student spent with the special education teacher working on reading and language skills. The student's fourth grade regular education teacher testified that she told the parents that she was not permitted to teach something new when someone was out of the class. (Testimony of Board fourth grade teacher,

January 15, 2002). Other Board personnel who worked directly with the student testified that they were unaware of any such fear on the part of the student. Nevertheless, in an attempt to address the parents' concern, the special education teacher tried briefly to meet with the student and two others in the back of the regular education classroom for the specialized instruction, but the student was uncomfortable and lacked the necessary attention. (Testimony of Board special education teacher, January 16, 2002).

15. The PPT met again on March 16, 2001, to plan the student's triennial evaluation. An appropriate organization goal was added to the IEP (Exhibit B-61, p. 5). The special education teacher, acting as case manager, agreed to call the parents twice monthly to review the student's program.

16. On March 20, 2001, at the request of the parents, the school psychologist sent the parents a list of some strategies which would increase the efficacy of school interventions if implemented at home. (Exhibit B-62; testimony of Board school psychologist, February 7, 2002).

17. Cathryn G. Riggs, Ph.D., was engaged by the Board to review the appropriateness of the student's IEP and related services. Testimony regarding Dr. Riggs' training, experience, and employment history satisfied the hearing officer that Dr. Riggs is amply qualified to perform such review. Dr. Riggs met with the student's mother on February 14 and May 22, 2001; carefully reviewed the student's educational file; interviewed Board personnel who work with the student; and observed the student in the regular education classroom, the small-group specialized instruction setting, and in the transition/movement between the two settings. Dr. Riggs did not observe the student to be anxious, isolated, or withdrawn. The student was able to respond to directions and "auditory receptive behavior" was appropriate. Dr. Riggs stated her opinion that implementation of the student's IEP was "closely aligned" with the recommendations of Dr. Cherkes-Julkowski. In response to the mother's concern that the student was misplacing or failing to bring home paperwork, Dr. Riggs spoke to the student's regular education teacher and special education teacher to set up a method for the student's entire regular education class (so as to not single out the student) for monitoring homework. Dr. Riggs spoke approvingly of the Wilson reading program, calling it "a *very* systematic method," and observed nothing that would indicate the need for speech/language services. (Exhibit P-8; testimony of Dr. Cathryn Riggs, February 7, 2002).

18. The student took the Connecticut Mastery Test (CMT) in September 2000, at the beginning of the fourth grade year. CMT scores were reported in the spring of 2001. On the math portion, the student's score was 191, indicating performance well below the statewide mathematics goal. Generally, students who score at this level demonstrate adequately developed computational skills, limited problem-solving and conceptual skills. On the writing portion, the student's score was 7. Generally, students who score at this level produce papers which are weakly developed narratives but include some expansion of events and characters; general and specific details show evidence of organization or sequencing. On the reading portion, the student's score was 41, indicating that the student can comprehend, with some teacher assistance, textbooks and other materials typically used at grade four or below. (Exhibit P-3).

19. Triennial evaluation took place between March 16 and June 5, 2001. (Exhibit B-64, 65, 66, 67). The special education teacher found the student to be working at a grade four level in all areas of the curriculum except for written language and handwriting which were found to be below grade level

standards. Nevertheless, improvement in written language was noted. In the Wilson reading program, in which the student works with two other children and the special education teacher, the student was described as very attentive and anxious to answer; no off-task behaviors were noted and responses were appropriate. (Exhibit B-64).

20. Based on the evaluation completed by Dr. Cherkes-Julkowski on April 19, 2000, the special education teacher administered the Woodcock Johnson Tests of Achievement-R, the Woodcock Johnson Cognitive Battery-R, the Gray Oral Reading Test 3, and the Test of Written Language 3. The student's performance on the letter-word identification and passage comprehension subtests was within the average range as compared to other children the student's age. Analysis of the student's word attack skills indicated that the ability to identify sight vocabulary and to apply structural and phonic strategies still poses some difficulty in the test setting. The student's reading comprehension skills are age appropriate in the test setting as well as in the classroom. The student's performance on the applied problems and calculation subtests was within the average range compared to other children the student's age. Appropriate strategies to solve problems were demonstrated in all four operations. The student's performance on the incomplete words subtest was within the average range as compared to other children the student's age. The student demonstrated a stronger ability to complete the visual closure subtest, scoring slightly above the average range on this subtest. The student scored within the average range on all portions of the Gray Oral Reading 3, which was administered over two separate days. It was noted that the student seemed more anxious and talkative on the second day; reading quickly caused the student to make some careless errors. The student's performance on the second day may have been slightly higher absent the student's level of anxiety. On the TOWL 3, the scores for the contextual conventions, contextual language, and story construction are derived from a story written by the student based on a picture prompt. The student's story illustrated the gains made this fourth grade year in spontaneous writing. The student demonstrated accurate use of punctuation, paragraphs, and capitalization. Although the student's contextual language did not include the use of compound sentences or conjunctions, the student's sentences were complete with adequate vocabulary development. The student's overall writing score on the TOWL 3 was found to be within the average range as compared to other children the student's age. (Exhibit B-65).

21. The speech/language portion of the triennial evaluation was done by the Board speech/language pathologist (Exhibit B-66). On the Lindamood Auditory Conceptualization Test, the student obtained a converted score of 88, two points above the recommended minimum score for fifth grade. On the Comprehensive Test of Phonological Processing, the student obtained a standard score of 10 on the Elision subtest and a standard score of 8 on the non-word repetition subtest. Standard scores of 7-13 are within the average range for the test. The Phonological Awareness Test (PAT) is normed to age 9 years, 11 months. Since the student's chronological age at the time of the triennial evaluation was 10 years, 6 months, standard scores could not be used. Therefore, the evaluator compared the raw scores obtained in testing done by Dr. Cherkes-Julkowski in April 2000 (Exhibit B-35, p.7-8) with the raw scores obtained in April 2001 as part of the triennial evaluation (Exhibit B-66, p.2). The student demonstrated improvement in both graphemes(consonants, long and short vowels, consonant blends, consonant digraphs, r-controlled vowels, vowel digraphs, dipthongs) and decoding (VC words, CVC words, consonant digraphs, consonant blends, vowel digraphs, r-controlled vowels, CVCe words, dipthongs). The speech/language pathologist concluded that the student appears to be no longer in need of speech/language consultative services; the student's

functioning in phonological awareness is at a level which indicates appropriate programming without these services; and the special education reading program appropriately meets the student's needs.

22. In the observation done by the school psychologist, the student was seen working quietly on assignments, following teacher directions well, putting forth solid effort, and demonstrating solid on-task, age-appropriate behavior. Peer relations were noted as appropriate as well as classroom behavior. As observed, the student was "a bit distracted at times" but the "distractibility level [did] not appear to be significant and may be considered as comparable" to peers in the class. The student's social/emotional functioning was assessed in March 1998 using the Behavior Assessment System for Children (BASC) (Exhibit B-13, p. 3-4). A fuller report of the BASC done in 1998 was attached as part of the 2001 triennial evaluation (Exhibit B-67, p.5).

23. In order to determine the student's progress within the context of the written IEP, it is necessary to review the goals and objectives set forth in the IEP developed for the student's fourth grade, school year 2000-2001 (Exhibit B-36, p.5-10). Satisfactory progress or mastery was reported for the student's math skills, reading, written language skills, verbal reasoning skills, phonological awareness skills, and development of positive self-concept.

24. The goals and objectives of the IEP developed for the fifth grade, school year 2001-2002 (Exhibit B-68), were measurable and directly related to meeting the student's needs as a child with a learning disability. While clearly providing not insignificant time for specialized instruction and counseling services, the program offered the student the advantage of maximum opportunity to be involved in and progress in the general curriculum with non-disabled peers. Testimony of Board personnel demonstrated that they are cognizant of and able to provide the support necessary to meet the student's learning and social/emotional needs.

## CONCLUSIONS OF LAW:

1. It is true that an IEP must provide an opportunity for more than "trivial advancement" and a free, appropriate public education (FAPE) under the IDEA is one that is "likely to produce progress, not regression." Mrs. B. v. Milford Bd. Of Education, 103 F.3d 1114, 1121 (2d Cir. 1997); Cypress-Fairbanks Independent School District v. Michael F., 118 F.3d 245, 248 (5th Cir. 1997), cert. denied, --- U.S. ---, 118 S.Ct. 690, 139 L.Ed.2d 636 (1998). Nevertheless, "[t]he Supreme Court . . . has specifically rejected the contention that the appropriate education mandated by the IDEA requires states to 'maximize the potential of handicapped children.'" Walczak v. Florida Free School District, 142 F.3d 119, 130 (2d Cir. 1998), quoting Hendrick Hudson District Bd. of Education v. Rowley, 458 U.S. 176, 197 n. 21, 189, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). "The purpose of the Act was 'more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside.'" Id. What the statute guarantees is an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents." Tucker v. Bay Shore Union Free School District, 873 F.2d 563, 567 (2d Cir. 1989). Nor does the IDEA require the Board to provide "the best education money can buy." Lunceford v. District of Columbia Bd. Of Education, 745 F.2d 1577, 1583 (2d Cir. 1989). Since FAPE does not mean the best or potential-maximizing education for the individual child, the focus must be on the Board's proposed placement, "not on the alternative that the

family preferred." <u>Tucker v. Calloway</u>, 136 F.3d 495, 505 (6th Cir. 1998), quoting <u>Gregory K. v. Longview School District</u>, 811 F.2d 1307, 1314 (9th Cir. 1987).

2.  The Board has the burden of proving the appropriateness of the student's program and placement, which burden shall be met by a preponderance of the evidence. R.C.S.A. Section 10-76h-14. The Board has met its burden here. The IEP offered to the student was reasonably calculated to enable the student to receive educational benefits and provide the student with an opportunity for more than trivial advancement. <u>Rowley</u>, 458 U.S. at 206-07, 102 S.Ct. at 3051.

3.  Pursuant to IDEA regulations, the Board is not required to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if the Board made FAPE available to the child and the parents elected to place the child in a private school or facility. 34 CFR Section 300.403(a). The Board made FAPE available to the student for the 2001-2002 school year and, thus, is not required to pay for the student's placement at Ben Bronz Academy.

## FINAL DECISION AND ORDER:

1.  The Board offered the student an appropriate IEP for the 2001-2002 school year.

2.  The parents are not entitled to reimbursement for the cost of the student's unilateral placement at Ben Bronz Academy.

If the local or regional board of education or the unified school district responsible for providing special education for the student requiring special education does not take action on the findings or prescription of the hearing officer within fifteen days after receipt thereof, the State Board of Education shall take appropriate action to enforce the findings or prescription of the hearing officer.

Appeals from the hearing decision of the hearing officer may be made to state or federal court by either party in accordance with the provisions of Section 4-183, Connecticut General Statutes, and Title 20, United States Code 1415(e).


_____
Hearing Officer Signature



_____
Hearing Officer    Name in Print

If the local or regional board of education or the unified school district responsible for providing special education for the student requiring special education does not take action on the findings or prescription of the hearing officer within fifteen days after receipt thereof, the State Board of Education shall take appropriate action to enforce the findings or prescription of the hearing officer.

Appeals from the hearing decision of the hearing officer may be made to state or federal court by either party in accordance with the provisions of Section 4-183, Connecticut General Statutes, and Title 20, United States Code 1415(e).

_____
Hearing Officer Signature

_____
Hearing Officer    .    Name in Print

March 25, 2002                    - 1 -                    (Case #01-310)

## STATE OF CONNECTICUT
## DEPARTMENT OF EDUCATION

Student v. New Britain Board of Education

Appearing on behalf of the Parents: Attorney Lawrence W. Berliner; Klebanoff & Phelan, 433 South Main Street, West Hartford CT 06110

Appearing on behalf of the Board: Attorney Lawrence J. Campane; Sullivan, Schoen, Campane & Connon, 646 Prospect Avenue, Hartford CT 06105-4286

Appearing before: Attorney Margaret J. Slez, Hearing Officer

## RULING ON MOTION FOR CLARIFICATION

## PROCEDURAL HISTORY

On March 18, 2002, the parents filed a motion for reconsideration and clarification of the final decision and order issued on February 19, 2002. The parents' motion was properly filed within 20 business days after the decision was issued. R.C.S.A. Sec. 10-76h-8(f)(4). On March 19, 2002, the Board filed an objection to the parents' motion.

## RULING:

The Board's objection is based, in part, on the failure of the parents to file their motion for reconsideration and clarification within the time limit set forth in R.C.S.A. Section 10-4-19(as amended 5/98). The parents' motion has been filed in accordance with the time limit set forth in R.C.S.A. Section 10-76h-8(f)(4)(as amended 6/2000). In the face of apparent conflict between the two regulations, the parents' motion is deemed timely by the hearing officer.

In accordance with R.C.S.A. Section 10-76h-15(a), the hearing officer received all oral, documentary, and other tangible evidence offered by the parties. Reference to the record establishes that no oral, documentary, or other tangible evidence introduced by the parties was excluded from consideration by the hearing officer during the course of the hearing. All such oral, documentary, and other tangible evidence was considered by the hearing officer in the course of weighing the evidence and writing the final decision and order.

Pursuant to R.C.S.A. Section 10-76h-14(a), the Board had the burden of proving the appropriateness of the program proposed by the Board for the 2001-2002 school year. Based on all oral, documentary, and other tangible evidence offered by the parties and considered by the hearing officer, the Board met its burden by a preponderance of the evidence.

The parents' request for further hearing of this matter is denied. The time to appeal the final decision and order dated February 19, 2002, shall run from the date of mailing of this decision on the parents' motion for reconsideration and clarification.

Date: March 25, 2002

Margaret J. Slez

**EXHIBIT B**

Student: Beth LaMay    DOB: 10-18-90    Consolidated School District of New Britain    Meeting Date: 6-7-01

**MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES**

STATE/ INTERMEDIATE

INDIVIDUALIZED EDUCATION PROGRAM

☑ Academic/Cognitive    ☐ Social/Behavioral    ☐ Communication    ☐ Gross/Fine Motor    ☐ Employment/Post Secondary Education***
☐ Self Help    ☐ Community Partic.***    ☐ Independent Living***    ☐ Health    ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4.A. Transition Summary, must be completed if this box is checked.)

**Measurable Annual Goal: # 1** Beth will increase her skills in reading.

Short Term Objectives/Benchmarks

Beth will...

**Obj.# 1** decode multisyllabic words containing 3 syllable types - open, closed, vowel - consonant - e, (in isolation)

Eval. Procedure: 10
Perf. Criteria: H
%, Trials, etc): Yrds

**Obj.# 2** decode and write r-controlled vowels in multisyllabic words. (in isolation)

Eval. Procedure: 1
Perf. Criteria: D    95%
%, Trials, etc): 95%

**Obj.# 3** complete comprehension questions related to a chapter or story she has read (materials presented to whole class in grade 5)

Eval. Procedure: 1
Perf. Criteria: D    Anno
%, Trials, etc): 95%

**Obj.# 4** complete or participate in any extension activities related to literature read in class ex - posters, group discussions, debates etc. (in small cooperative learning groups)

Eval. Procedure: 11
Perf. Criteria: E    80%
%, Trials, etc): 80%

NOTE on this pink "D" scores 90% satis. progress

**Enter Dates For Evaluating and Reporting Progress in Boxes Below**

| | 1 | 2 | 3 |
|---|---|---|---|
| | 11/01 | 1/3/02 | AR |

*Report Progress Below (Use Reporting Key)*

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify) teacher observation
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grade/Score
E. Frequency/Trials
F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

**Progress Reporting Key:** (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal    N = No Progress - Will not achieve goal    M = Mastered
S = Satisfactory Progress - Likely to achieve goal    NI = Not Introduced    O = Other: (specify)

Related to meeting the student's needs that result from the student's disability to enable the student to be involved and progress in the general curriculum, and to meet each of the student's other educational needs that result from the student's disability.
*** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if transition services are addressed.
*** Note: If transition services are addressed, there must be a Justification Statement on the Summary Sheet: Transition Planning, Page 4.A. (Item 4a) if a goal and related objectives are not developed for this area.

Rev. 2/99

4

Goal Page # 1 of 7 Goal Pages
071-512-4

Student: __Beth LaMay__  DOB: __10-18-9°__ Consolidated School District of New Britain    Meeting Date: __6-7-01__

**INDIVIDUALIZED EDUCATION PROGRAM**

**MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES***

☒ Academic/Cognitive    ☐ Social/Behavioral    ☐ Communication    ☐ Gross/Fine Motor    ☐ Employment/Post Secondary Education**
☐ Self Help    ☐ Community Partic.***    ☐ Independent Living***    ☐ Health    ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

Measurable Annual Goal*: # __1    Continued__

_Beth will..._

**Short Term Objectives/Benchmarks**

Obj.# __5__ _in connected text or grade level materials decode multi-syllabic words + controlled vowel words._

Eval. Procedure: _____
Perf. Criteria: _____
(%, Trials, etc:) _____

Obj. # __6__ _increase her oral decoding fluency in connected text to 100 words per minute by January 2002._

Eval. Procedure: __1__
Perf. Criteria: __0__
(%, Trials, etc:) __90%__

Obj #__7__ _increase her oral decoding fluency in connected text to 150 words per minute._

Eval. Procedure: __1__
Perf. Criteria: __0__
(%, Trials, etc:) __90%__

Obj # _____

Eval. Procedure: _____
Perf. Criteria: _____
(%, Trials, etc:) _____

**Enter Dates For Evaluating and Reporting Progress In Boxes Below**

| | | | |
|---|---|---|---|
| 1/1/01 | 3/02 | AR | |

Report Progress Below (Use Reporting Key)

| 1 | 2 | 3 | 4 |
|---|---|---|---|

Report Progress Below (Use Reporting Key)

| 1 | 2 | 3 | 4 |
|---|---|---|---|

Report Progress Below (Use Reporting Key)

| 1 | 2 | 3 | 4 |
|---|---|---|---|

Report Progress Below (Use Reporting Key)

| 1 | 2 | 3 | 4 |
|---|---|---|---|

Report Progress Below (Use Reporting Key)

| 1 | 2 | 3 | 4 |
|---|---|---|---|

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify)
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grades/Score
E. Frequency/Trials
F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

M = Mastered    S = Satisfactory Progress - Likely to achieve goal
NI = Not Introduced    O = Other: (specify)

**Progress Reporting Key:** (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal    N = No Progress - Will not achieve goal

* Related to meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum; and to meet each of the student's other educational needs that result from the student's disability.
** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if transition services are addressed.
*** Note: If transition services are addressed, there must be a Justification Statement on the Summary Sheet, Transition Planning, Page 4-A. (Item 4a) if a goal and related objectives are not developed for this area.

Rev. 2/99

4

Goal Page #
071-517-4

__2__ of __7__ Goal Pages

B-68
7 of 21

Student: __Beth LaMay__    DOB: __10-18-90__ Consolidated School District of New Britain    Meeting Date: __6-7-01__

## MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES*

### INDIVIDUALIZED EDUCATION PROGRAM

- ☒ Academic/Cognitive
- ☐ Self Help
- ☐ Social/Behavioral
- ☐ Community Partic. ***
- ☐ Communication
- ☐ Independent Living ***
- ☐ Gross/Fine Motor
- ☐ Health
- ☐ Employment/Post Secondary Education**
- ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

**Measurable Annual Goal**: # 2  Beth will increase her skills in written language.

| | Enter Dates For Evaluating and Reporting Progress In Boxes Below |
|---|---|
| | 1/01  3/02  AR |

### Short Term Objectives/Benchmarks

Beth will...

**Obj.# 1.** maintain at least a C ave. on weekly spelling/vocabulary tests

Eval. Procedure: 10
Perf. Criteria: H
(%, Trials, etc.): today

*Report Progress Below (Use Reporting Key)*

**Obj.# 2.** complete a graphic organizer for a persuasive writing prompt to grade level standards

Eval. Procedure: 4
Perf. Criteria: 0
(%, Trials, etc.): 25%

*Report Progress Below (Use Reporting Key)*

**Obj.# 3.** complete a persuasive writing prompt to the standards of a writing rubric score 4/Good.

Eval. Procedure: 9
Perf. Criteria: 0
(%, Trials, etc.): 25%

*Report Progress Below (Use Reporting Key)*

**Obj.# 4.** provide a written response to literature in the form of an essay, article, comparison, log etc.

Eval. Procedure: 9
Perf. Criteria: 1
(%, Trials, etc.): 4

*Report Progress Below (Use Reporting Key)*

Eval. Procedure: 9
Perf. Criteria: 0
(%, Trials, etc.): Cask

*Report Progress Below (Use Reporting Key)*

### Evaluation Procedures

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify)
12. Other: (specify)

### Performance Criteria

- A. Percent of Change
- B. Months Growth
- C. Standard Score Increase
- D. Passing Grades/Score
- E. Frequency/Trials
- F. Duration
- G. Successful Completion of Task/Activity
- H. Mastery
- I. Other: (specify) writing rubric
- J. Other: (specify)

M = Mastered    S = Satisfactory Progress - Likely to achieve goal
NI = Not Introduced    O = Other: (specify)

**Progress Reporting Key:** (indicating extent to which progress is sufficient to achieve goal by the end of the year)

U = Unsatisfactory Progress - Unlikely to achieve goal    N = No Progress - Will not achieve goal    NI = Not Introduced    O = Other: (specify)

* Related to meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum, and to meet each of the student's other educational needs that result from the student's disability.

** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if transition services are addressed.

*** If transition services are addressed, there must be a Justification Statement on the Summary Sheet, Transition Planning, Page 4-A, (Item 4a) if a goal and related objectives are not developed for this area.

Goal Page # 071-512-4

X3 of 7 X8    Goal Pages

Rev. 2/99    4

B-68
8 of 21

Student: Beth LaMay     DOB: 10-18-90 Consolidated School District of New Britain

**MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES***
**INDIVIDUALIZED EDUCATION PROGRAM**

Meeting Date: 6-7-01

☑ Academic/Cognitive    ☐ Social/Behavioral    ☐ Communication    ☐ Employment/Post Secondary Education**
☐ Self Help    ☐ Community Partic.***    ☐ Independent Living***    ☐ Gross/Fine Motor    ☐ Health    ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

Measurable Annual Goal:#_3  Beth will increase her    Eval. Procedure: 10
math skills .    Perf. Criteria: ++

Beth will...    (%, Trials, etc.): 3obj

Short Term Objectives/Benchmarks

Obj.#_1 add and subtract fractions with like and    Eval. Procedure: 1
unlike denominators .    Perf. Criteria: D
(%, Trials, etc.): 80%

Obj.#_2 find equivalent fractions and fractions in    Eval. Procedure: 1
their lowest terms from pictures and models    Perf. Criteria: D
(%, Trials, etc.): 80%

Obj.#_3 measure and determine the perimeter    Eval. Procedure: +
and area of squares, rectangles and right    Perf. Criteria: D
triangles using the proper formula    (%, Trials, etc.): 80%

Obj.#    Eval. Procedure:
Perf. Criteria:
(%, Trials, etc.):

Obj.#    Eval. Procedure:
Perf. Criteria:
(%, Trials, etc.):

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio

7. Behavioral/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify)
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grades/Score
E. Frequency/Trials

F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

Progress Reporting Key: (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal    N = No Progress - Will not achieve goal    NI = Not Introduced    M = Mastered    S = Satisfactory Progress - Likely to achieve goal    O = Other: (specify)

Enter Date(s) For Evaluating and
Reporting Progress In Boxes Below

| 11/01 | 3/02 | AR |
| | | | |

Report Progress Below (Use Reporting Key)
| | | | |

Report Progress Below (Use Reporting Key)
| | | | |

Report Progress Below (Use Reporting Key)
| | | | |

Report Progress Below (Use Reporting Key)
| | | | |

Report Progress Below (Use Reporting Key)
| | | | |

Related to meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum; and to meet each of the student's other educational needs that result from the student's disability.
** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if transition services are to be provided.
*** Note: If transition services are addressed, there must be a Justification Statement on the Summary Sheet; Transition Planning, Page 4-A, (Item 4a) if a goal and related objectives are not developed for this area.

Rev. 2/99

Goal Page #_34_ of _X77_ Goal Page

4

Student: Beth LaMay   DOB: 10-18-90   Consolidated School District of New Britain

INDIVIDUALIZED EDUCATION PROGRAM

MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES*

Meeting Date: 6-7-01

☐ Academic/Cognitive   ☒ Social/Behavioral   ☐ Communication   ☐ Gross/Fine Motor   ☐ Employment/Post Secondary Education**
☐ Self Help                          ☐ Community Partic. ***   ☐ Independent Living***   ☐ Health                ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

Measurable Annual Goal*: # 4. Beth will further develop a positive self-concept by achieving 3 out of 3 objectives.

**Enter Dates For Evaluating and Reporting Progress in Boxes Below**

| | | | | |
|---|---|---|---|---|
| 11/01 | 3/02 | 6/02 | | |

**Short Term Objectives/Benchmarks**

Obj #1. Beth will exhibit resilient coping skills by accepting constructive criticism appropriately.

Eval. Procedure: 16
Perf. Criteria: H   6/6
(%, Trials, etc.):

*Report Progress Below (Use Reporting Key)*

Obj. #2. Beth will take reasonable academic risks with acceptance of the outcome.

Eval. Procedure: 11,12
Perf. Criteria: E
(%, Trials, etc.): 80%

*Report Progress Below (Use Reporting Key)*

Obj #3. Beth will identify and verbalize positive aspects of her work in classroom and areas abilities.

Eval. Procedure: 11,12
Perf. Criteria: E
(%, Trials, etc.): 80%

*Report Progress Below (Use Reporting Key)*

Obj #       (specify) teacher consultation
                        observations

Eval. Procedure:
Perf. Criteria:
(%, Trials, etc.):

*Report Progress Below (Use Reporting Key)*

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify)
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grades/Score
E. Frequency/Trials
F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

M = Mastered   S = Satisfactory Progress - Likely to achieve goal
NI = Not Introduced   O = Other: (specify)

Progress Reporting Key: (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal   N = No Progress - Will not achieve goal

Student: __Beth LaMay__  DOB: __10-18-90__  **Consolidated School District of New Britain**

**INDIVIDUALIZED EDUCATION PROGRAM**

☐ Academic/Cognitive  ☑ Social/Behavioral  ☐ Communication  ☐ Gross/Fine Motor  ☐ Employment/Post Secondary Education**
☐ Self Help  ☐ Community Partic.***  ☐ Independent Living***  ☐ Health  ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

**MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES\***

Meeting Date: __6-7-01__

Measurable Annual Goal*: # __4__ __(continued)__ re: social skills lunch
group.

**Short Term Objectives/Benchmarks**

Obj # __4.__ increase initiation of social interaction
with peers during social lunch group.

Eval. Procedure: _____
Perf. Criteria: __4__
(%, Trials, etc.)

Obj. # __5.__ increase accurate social perception
of others' motivations and beliefs during
social lunch group by appropriate verbalization in group
Eval. Procedure: __E__
Perf. Criteria: __E__ 1 per session
(%, Trials, etc.)

Obj # __6.__ identify sources of frustration and
develop alternate solutions during social
lunch group.

Eval. Procedure: __11__
Perf. Criteria: __6__ weekly
(%, Trials, etc.)

Obj #
Eval. Procedure: __11__
Perf. Criteria: __8__ 4/5 hrs
(%, Trials, etc.)

Obj #
Eval. Procedure: _____
Perf. Criteria: _____
(%, Trials, etc.)

**Enter Dates For Evaluating and Reporting Progress in Boxes Below**

Report Progress Below (Use Reporting Key)
11/01 | 3/02 | 6/02

Report Progress Below (Use Reporting Key)

Report Progress Below (Use Reporting Key)

Report Progress Below (Use Reporting Key)

Report Progress Below (Use Reporting Key)

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance or Products
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify) staff charting
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grades/Score
E. Frequency/Trials
F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

Progress Reporting Key: (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal  N = No Progress - Will not achieve goal  S = Satisfactory Progress - Likely to achieve goal
NI = Not Introduced  O = Other: (specify)

* Related to meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum and to meet each of the student's other educational needs that result from the student's disability.
** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if Transition services are addressed.
*** If transition services are addressed, there must be a Justification Statement on the Summary Sheet, Transition Planning, Page 4-A. (Item 4a) If a goal and related objectives are not developed for this area.

Rev. 2/99

B-68
11 of 21

Student: **Beth LaMay**    DOB: **10-18-00**    Consolidated School District of New Britain    Meeting Date: **6-7-01**

## MEASURABLE ANNUAL GOAL AND SHORT TERM OBJECTIVES'

### INDIVIDUALIZED EDUCATION PROGRAM

☐ Academic/Cognitive    ☐ Social/Behavioral    ☐ Communication    ☐ Gross/Fine Motor    ☐ Employment/Post Secondary Education**
☒ Self Help    ☐ Community Partic.***    ☐ Independent Living***    ☐ Health    ☐ Other: (specify)

☐ Check here if the student is 13 or older. (Note: Page 4-A, Transition Summary, must be completed if this box is checked)

Measurable Annual Goal: # 5. Beth will demonstrate the use of strategies to promote organization by achieving 3 out of 3 objectives.

**Short Term Objectives/Benchmarks**

Obj. #1. Use self-monitoring checklists, planners or calendars to remain organized on a weekly basis.

Eval. Procedure: 10
Perf. Criteria: 6
(%, Trials, etc): 3/3

Obj. #2. Maintain a journal in weekly individual counseling sessions regarding time-management concerns and solutions.

Eval. Procedure: 6.9
Perf. Criteria: E
(%, Trials, etc): weekly

Obj. #3. Identify and verbalize feelings and needs regarding organization/time-management proactively, and log in journal in a weekly basis.

Eval. Procedure: 6.9
Perf. Criteria: E
(%, Trials, etc): weekly

Obj. #____

Eval. Procedure: ____
Perf. Criteria: ____
(%, Trials, etc): ____

**Enter Dates For Evaluating and Reporting Progress in Boxes Below**

| | 7/1/01 | 3/02 | 4/02 |
|---|---|---|---|

*Report Progress Below (Use Reporting Key)*

*Report Progress Below (Use Reporting Key)*

*Report Progress Below (Use Reporting Key)*

*Report Progress Below (Use Reporting Key)*

**Evaluation Procedures**

1. Criterion-Referenced/Curriculum Based Assessment
2. Pre & Post Standardized Assessment
3. Pre & Post Base Line Data
4. Quizzes/Tests
5. Student Self-assessment/Rubric
6. Project/Experiment/Portfolio
7. Behavior/Performance Rating Scale
8. CMT/CAPT
9. Work Samples, Job Performance of (Products)
10. Achievement of Objectives (Note: use with goal only)
11. Other: (specify)
12. Other: (specify)

**Performance Criteria**

A. Percent of Change
B. Months Growth
C. Standard Score Increase
D. Passing Grades/Score
E. Frequency/Trials
F. Duration
G. Successful Completion of Task/Activity
H. Mastery
I. Other: (specify)
J. Other: (specify)

M = Mastered    S = Satisfactory Progress - Likely to achieve goal
NI = Not Introduced    O = Other: (specify)

**Progress Reporting Key:** (indicating extent to which progress is sufficient to achieve goal by the end of the year)
U = Unsatisfactory Progress - Unlikely to achieve goal    N = No Progress - Will not achieve goal    N = No Progress - to enable the student to be involved in and progress in the general curriculum; and to meet each of the student's other educational needs that result from the student's disability.

* Related to meeting the student's needs that result from the student's disability to enable the student to be involved in and progress in the general curriculum; and to meet each of the student's other educational needs that result from the student's disability.
** It is recommended that, at a minimum, a goal and related objectives be developed for the area of Employment/Post Secondary Education if transition services are addressed.
*** Note: If transition services are addressed, there must be a Justification Statement on the Summary Sheet: Transition Planning, Page 4-A. (Item 4a) if a goal and related objectives are not developed for this area.

Rev. 2/99

4

Goal Page #
071-512-4

X 7 of 7 Goal Pages

B 68
12 of 21

tudent: Beth LaMay    DOB: 10-18-90    Consolidated School District of New Britain    Meeting Date: 6-7-01

INDIVIDUALIZED EDUCATION PROGRAM

## SUMMARY: SPECIAL EDUCATION, RELATED SERVICES, AND REGULAR EDUCATION

| Special Education | Goal # | Hours/Week | Staff Responsible/Implementer | Goal # | Start Date | End Date | Site | Instructional Site: (Indicate all that apply) |
|---|---|---|---|---|---|---|---|---|
| SE1 special ed. reading instruction | 2,3,4* | 1.5 | Special ed. teacher/para | 2,3,4 | 9-5-01 | 6-20-02 | 1 | 1. Regular Classroom |
| | 1,4* | 1.5 | Special ed. teacher | | 9-5-01 | 6-20-02 | 2 | 2. Resource Room |
| | | | | | | | | 3. Self-contained Classroom |
| Related Services | | | | | | | | 4. Related Service Office/Classroom |
| counseling | 4,5 | .5 | School psychologist | 4,5 | 9-5-01 | 6-20-02 | 4 | 5. Community-based |
| Social skills group | 4 | .25 | psychologist / SW. | 4 | 9-5-01 | 6-20-02 | 4 | 6. Other: (specify) |
| Regular Education | 1-5 | 26.25 | regular ed. staff | 1-5 | 9-5-01 | 6-20-02 | 1 | 7. Other: (specify) |

**Note:** Each Item Below (# 1 to 15) Must Include a Response:

1. Assistive Technology: ☐ N/A, ☒ Required (specify) Access to computer See #15
2. Applied (Voc./Educ.: ☒ N/A, ☐ Regular ☐ Special (specify)
3. Physical Education: ☐ N/A, ☒ Regular ☐ Special (specify)
4. Transportation: ☒ N/A, ☐ Regular ☐ Special (specify)

* For goal #4 - objectives 1 and 2.

9. SY 01-02 _____ Spec. Educ. Hours/Week: 3 +Related Service Hours/Week: .5 +Regular Ed. Hours/Week: 26.5 = Total Ed Hours/Week: 30  Hrs. w/non-disabled peers 27.5
   SY _____ Spec. Educ. Hours/Week: _____ +Related Service Hours/Week: _____ +Regular Ed. Hours/Week: _____ = Total Ed Hours/Week: _____  Hrs. w/non-disabled peers _____

6. Length of School Day: ☒ Standard ☐ 2.5 HRS. ☐Other: (specify)
6. Total Hours/Week: ☒ Standard ☐ 12.5 HRS. ☐Other: (specify)
7. Number of Days/Week: ☒ Standard ☐ Other: (specify)
8. Length of School Year: ☒ Standard ☐ Other: (specify)

10. Extended School Year Services: ☒ Not Required ☐ Required: See Page 1, 'List of PPT Recommendations' for details of services to be provided ☐ Required: Continue to Implement current IEP
11. Supports for personnel required to implement this IEP: ☒ No supports required ☐ See Page 6 ☐ Other: (specify)
12. For students whose behavior impedes her/his learning or that of others, the PPT has considered these strategies, including positive behavioral interventions and supports to address that behavior:
    ☒ N/A   ☐ A behavioral intervention plan has been developed   ☐ IEP Goals and Objectives have been developed to address the behavior   ☐ Other: (specify)
13. For students with Limited English Proficiency, the PPT has considered the language needs of the student as these needs relate to the student's IEP and recommended the following:
    ☒ N/A   ☐ Recommendation: (specify)
14. For students who are Blind or Visually Impaired: ☒ N/A   ☐ Instruction in Braille or the use of Braille is being provided, as required   ☐ The PPT has determined, after an evaluation of the student's reading and writing skills, needs, and appropriate reading and writing media (including an evaluation of the student's future need for instruction in Braille or the use of Braille), that instruction in Braille or the use of Braille is not appropriate for this student.
15. For students who are Deaf or Hard of Hearing, the PPT has determined (after considering the student's language and communication needs, opportunities for direct communications with peers and professional personnel in the child's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the student's language and communication mode, and considering whether the student requires assistive technology devices and services) that the following services are required: ☒ N/A   ☐ No services required
    ☐ Services/modifications required: (specify)

August 1998 (Page Revised February 2000)    5

071-512-5

B-60
13 of 21